IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOHN DOE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:25-CV-02593-ELR |
| | * | |
| ALYSSA H. BAYLIS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

_____

**ORDER**

_____

This matter is before the Court on Plaintiff John Doe's Motion for Preliminary Injunction ("PI Motion") [Doc. 4]. For the reasons below, the Court denies the motion.

**I.   Background**

Plaintiff John Doe and Defendant Alyssa Baylis met in late 2015 and got to know one another through social media and texting. Compl. ¶ 6 [Doc. 1].[1] After a one-night stand in 2016, they mutually agreed to end their relationship and parted ways. Id. ¶¶ 7–8. Nearly a decade later, in March 2025, Doe and Baylis reconnected

---

[1] Doe submits a sworn affidavit verifying the facts alleged in the Complaint. Aff. of John Doe ¶ 4 [Doc. 5].

on Instagram and started talking again. Id. ¶ 9. Their conversations quickly became intimate. Within a month, Doe sent Baylis nude photos of himself, which he says were for her eyes only. Id. ¶¶ 10–11.

The relationship was short lived. In April 2025, after a falling out, Doe told Baylis he was ending things and cutting off all communication with her. Id. ¶¶ 12–13. Baylis did not take the news very well. On May 1, 2025, she began sending what Doe describes as "a barrage of increasingly aggressive and threatening text messages." Id. ¶ 14. Doe asked her repeatedly to leave him alone, which only added fuel to the fire. Id. ¶¶ 14–16.

On May 2, Baylis continued to harass Doe with hostile texts, threatening to post his nude photos and dox him on social media. Id. ¶ 17. Although Baylis never followed through with that threat, she did send a fully nude selfie of Doe with the word "CHEATER" written across it to one of her friends later that evening. Id. ¶ 22. As proof, Baylis sent Doe a screenshot of texts she exchanged with her friend along with several disparaging remarks the two made about Doe's appearance. Id. ¶ 25–27. Over the following week, Baylis continued sending Doe hostile and berating texts, suggesting that she would share the photo more broadly, including to Doe's workplace. Id. ¶¶ 16–20, 23, 30.

Doe responded by filing this lawsuit and PI Motion, alleging that Baylis violated 15 U.S.C. § 6851 by disseminating sexually explicit images of him without

2

his consent. Id. ¶¶ 33–40; [Doc. 4]. Doe asks the Court to enjoin Baylis from (1) disclosing or transmitting any intimate visual depictions of him; (2) threatening or encouraging their dissemination; and (3) contacting him or third parties for the purpose of sharing or discussing such depictions. [Doc. 4 at 2]. After being served, Baylis responded to the PI Motion, arguing that it should be denied because she no longer possesses the nude photos of Doe. [Doc. 17]. She has submitted several affidavits supporting that claim, stating that she has deleted the photos and no longer retains any messages she exchanged with Doe.

In her affidavits, Baylis admits to sending the photo of Doe with the word "CHEATER" written on it to one of her friends on one occasion but claims she did not send it to anyone else. June 25, 2025 Aff. of Alyssa Baylis ("First Baylis Aff.") ¶¶ 3, 6 [Doc. 17, Ex. A]; July 9, 2025 Aff. of Alyssa Baylis ("Second Baylis Aff.") ¶ 4 [Doc. 25]. She says she sent the photo because she felt "victimized and abused" after learning that Doe had lied to her about being separated from his wife. First Baylis Aff. ¶¶ 3–4; Second Baylis Aff. ¶ 4. After being served with this lawsuit, Baylis hired an IT consultant to permanently delete all photos and videos of Doe, along with their message and text history, from her devices and iCloud account. First Baylis Aff. ¶¶ 6–7. Baylis now swears that she no longer possesses the photos and has no way to send them to anyone else. Id. ¶¶ 9, 26.

The IT consultant verifies that all photographs and videos of Doe, and all messages she exchanged with him, have been irretrievably deleted from her devices and iCloud account.[2] June 24, 2025 Aff. of Christopher Tague ("First Tague Aff.") ¶¶ 5–9 [Doc. 17, Ex. B]; July 9, 2025 Aff. of Christopher Tague ("Second Tague Aff.") ¶¶ 2–9 [Doc. 27]. The friend who received the photo also submitted an affidavit affirming that Baylis sent her only one photo, which she deleted and did not share with anyone else. Aff. of Jamie Auster ("Auster Aff.") ¶¶ 6–9 [Doc. 17, Ex. C].

Doe filed a reply brief in support of his PI Motion [Doc. 23], and the Parties presented oral argument at a hearing on July 16, 2025.[3] The motion is now ripe for review.

## II.   Legal Standard

To obtain injunctive relief, Doe must demonstrate: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable injury if the injunction is

---

[2] Before deleting the photos and texts, the IT consultant preserved the files for litigation purposes. First Teague Aff. ¶ 5. Those files are in Baylis's counsel's possession, and Baylis does not have access to them. Aff. of Lauren Antonio ¶¶ 3–4 [Doc. 18].

[3] The Court limited the hearing to oral argument and did not permit witness testimony, which the Parties previously requested. An evidentiary hearing is required when the "facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue[.]" McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312 (11th Cir. 1998) ("Generally, of course, a judge should not resolve a factual dispute on affidavits or depositions, for then he is merely showing a preference for 'one piece of paper to another.'"). Because there is no genuine dispute in the record that Baylis still has access to the photos, an evidentiary hearing was not necessary.

not granted; (3) that the threatened injury to Doe absent an injunction outweighs the damage to Baylis if an injunction is granted; and (4) that granting the injunction would not disserve the public interest. Keister v. Bell, 879 F.3d 1282, 1287 (11th Cir. 2018). Injunctive relief is "an extraordinary and drastic remedy" that should be granted only when the plaintiff clearly carries the burden of persuasion as to each of the four prerequisites. Id. (citation omitted). Thus, if a party fails on one prong of the preliminary injunction standard, the Court need not consider the other three. See Bloedorn v. Grube, 631 F.3d 1218, 1242 (11th Cir. 2011) (declining to evaluate the remaining three elements after determining that plaintiff failed to establish a likelihood of success on the merits). Deciding whether Doe has met this burden lies "within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." Int'l Cosms. Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002) (citation omitted).

### III. Discussion

Doe cannot prevail on the PI Motion because he has failed to satisfy the second element for preliminary injunctive relief: that an injunction is necessary to prevent him from suffering irreparable harm.

Doe's entire argument on the irreparable harm prong hangs on the "continuing threat" that Baylis will share his photos with others. [Doc. 4-1 at 4]. The Court agrees that if such a threat were real, it would warrant serious concern. Photos like these,

5

once seen, cannot be unseen. And the embarrassment, reputational harm, emotional distress they cause is not the kind of damage that money can easily fix. That is why courts often find irreparable harm in these types of cases when the plaintiff shows a substantial risk that the defendant will keep sending explicit images. See, e.g., Doe v. Serpa, 3:25-CV-0057-X, 2025 WL 332555, at *3 (N.D. Tex. Jan. 29, 2025) (finding irreparable harm where the plaintiff showed a likelihood that the defendant would "further disseminate the image she has"); Doe v. Unknown Party, CV-24-00252-PHX-DLR, 2024 WL 492231, at *3 (D. Ariz. Feb. 7, 2024) (issuing TRO based on a substantial risk of retaliation through further disclosures); Doe v. Spencer, 1:23-CV-00002, 2023 WL 1484924, at *3 (M.D. Tenn. Feb. 2, 2023) ("[T]he Court is not convinced Defendant will refrain from disclosing intimate photographs of Plaintiff . . . to others absent an injunction.").

But this case is different. Doe no longer faces an actual and imminent threat of irreparable harm. Although Baylis has made past threats to disseminate Doe's photos to a wider audience, she has since presented substantial evidence that she can no longer make good on those threats even if she wanted to. Baylis submits two sworn affidavits stating that she permanently deleted the photos and no longer has access to them. Fist Baylis Aff. ¶¶ 3, 6; Second Baylis Aff. ¶ 4. But she does not just ask the Court to take her word for it. She backs up her claim with affidavits from three other people. Most notably, Baylis submits affidavits from an IT consultant

6

who examined her devices and iCloud account to confirm that they no longer contain any photos of Doe, their text history, or any screenshots of those texts. First Tague Aff. ¶¶ 5–9; Second Tague Aff. ¶¶ 2–9. In addition, the only person who Baylis admits to sending the photo to confirms that she received a single intimate photo of Doe, which she deleted and did not share with anyone else. Auster Aff. ¶¶ 6–9. Together, this evidence eliminates any real risk of continued harm. Baylis no longer has the images, and she cannot send what she no longer possesses.

Still, Doe insists that a threat remains. [Doc. 23 at 8]. But he has submitted no evidence to counter the multiple sworn affidavits that Baylis no longer possesses the photos. His argument rests entirely on Baylis's *past* threats—threats that apparently stopped on May 12, 2025, when Baylis learned of this lawsuit. [Id. at 4–5]. Since then, the record shows no further threats and no action suggesting Baylis retained or shared the photos. And at the PI hearing, Doe repeatedly represented that the threat of future disclosure is a mere possibility. Put simply, Doe's fear of future harm is just that—a fear, unsupported by any evidence of an actual or imminent threat. At most, the risk of irreparable harm is speculative or possible. And that is not enough to justify the extraordinary remedy of injunctive relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy[.]"); Vital Pharm., Inc. v. Alfieri, 23

7

F.4th 1282, 1292 (11th Cir. 2022) (vacating injunction premised on an asserted injury that was "remote and speculative, not actual and imminent" (cleaned up)).

Doe v. Alame, 3:25-CV-0329-B, 2025 WL 476257 (N.D. Tex. Feb. 12, 2025), a recent case with nearly identical facts, supports the Court's conclusion. There, the plaintiff also asked the court to enjoin the defendant from disclosing her intimate images. Id. at *1. The court denied the motion because the plaintiff failed to allege that the defendant had regained access to the photos, which were stored on a phone that the police had seized. Id. at *2. "Without a clear allegation that [the defendant] continues to have access to the explicit images," the court explained, the asserted harm was a mere possibility, not a likely threat. Id. After the plaintiff amended her motion to allege that the defendant's phone had been returned, the court found that the threat of irreparable harm had been restored and issued the injunction. Doe v. Alame, 3:25-CV-0329-B, 2025 WL 713120, at *3 (N.D. Tex. Feb. 24, 2025).

Doe strains to distinguish Alame but skips over the part that matters most: a threat of irreparable harm is mere speculation without evidence that the defendant can carry it out. [Doc. 23 at 10–11]. Because the record in this case contains no such evidence, Doe has not carried his burden to establish the second prong of the preliminary injunction standard. Thus, the Court need not address Doe's likelihood of success on the merits, the balance of hardships, or whether an injunction serves the public interest. See Bloedorn, 631 F.3d at 1242.

8

## IV. Conclusion

For the reasons above, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction [Doc. 4].

**SO ORDERED**, this 16th day of July, 2025.

_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia